UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

Leonard Robert Leff a/k/a Lenny Leff,

                        Debtor.
-----------------------------------------------------------------x
Allan B. Mendelsohn as Trustee of the Estate of
Leonard Robert Leff a/k/a Lenny Leff,

                        Plaintiff,

v.

Roslyn, LLC and Elias Chalet, LLC,

                        Defendants.
-----------------------------------------------------------------x

Case No. 8-19-73377-reg

Chapter 7

Adv Proc. No. 8-20-08012-reg

## DECISION

### Introduction

      This matter is before the Court pursuant to an adversary proceeding commenced by Allan B. Mendelsohn (the "Trustee" or the "Plaintiff") as the chapter 7 trustee in the case of Leonard Robert Leff a/k/a Lenny Leff  (the "Debtor"). The Trustee seeks to recover prepetition transfers to Roslyn, LLC and Elias Chalet, LLC (the "Defendants"), in the amount of $88,831.79. Each of the subject transfers were made from a bank account jointly held by the Debtor and his non-filing spouse, Beth Leff ("Beth").  The Trustee's claims are based on constructive and intentional fraudulent conveyance law, and the theory of unjust enrichment.  The parties to this adversary proceeding opted to forego holding an evidentiary hearing in favor of resting on written submissions.  Notwithstanding the procedural vagaries of this case, the role of the Court remains

1

the same, which is to determine whether the Trustee is entitled to the relief he seeks in the complaint.

Ruling on the relief sought by the Trustee under the federal bankruptcy statutes requires an examination of the effect applicable state law has on these claims.  The Trustee acknowledges in his pleadings that all the transfers he seeks to avoid were disbursed from this joint account. However, the Trustee fails to take into account the legal significance of the very facts he alleges. Once funds were deposited into the joint account, Beth became the presumptive legal owner of half of all such funds under New York law. This decision explores with specificity the legal implications flowing from this, as well as the consequences of failing to present an evidentiary record sufficient to establish a *prima facie* case as to any of the causes of action set forth in the complaint. Because of these infirmities, the Court must deny the relief requested and rule in favor of the Defendant.

This case highlights that parties relying upon federal bankruptcy statutes must be cognizant of the effect applicable state law may have on the relief requested. Just as salient is the need to ensure that the record before the Court is sufficient and clear enough to establish the elements of each cause of action.

**Procedural History**

On May 8, 2019 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On May 8, 2019, the Trustee was appointed. On September 3, 2019, an order was entered granting the Trustee's motion for a Rule 2004 examination of Beth [Case No. 8-19-73377, ECF No. 34].  The Trustee examined Beth on December 19, 2019.   On

January 17, 2020, the Trustee commenced this adversary proceeding against the Defendants.[1]

On the same date, the Trustee also commenced an adversary proceeding No. 8-20-8013 against

Beth ("Beth Leff Adversary Proceeding") seeking recovery of an alleged fraudulent transfer of

real property prepetition from the Debtor to Beth and authorization to sell the real property on

behalf of the Debtor's estate and/or to conduct a section 363(h) sale of the real property.  The

Beth Leff Adversary Proceeding was settled and an order approving the Trustee's settlement

("Settlement Agreement") pursuant to Bankruptcy Rule 9019 was entered on August 4, 2020.

[Beth Leff Adversary Proceeding, ECF Nos. 12, 14].   The Settlement Agreement contains

language releasing Beth from any and all claims and causes of action the Trustee has or may

have that arose on or before the date of the Settlement Agreement, including any such causes of

action arising under the Bankruptcy Code. [Beth Leff Adversary Proceeding, ECF No. 12, Ex.

3].

On February 17, 2020, the Defendants filed an answer in the instant adversary

proceeding.  On February 12, 2021, the Court entered an order scheduling a trial by video

conference for March 11, 2021.  On March 4, 2021, the parties filed a Joint Pretrial

Memorandum.  The parties requested that in lieu of an evidentiary hearing, the issues be

presented on papers to be filed, to which the Court agreed.  The parties agreed to submit initial

briefs on or before March 17, 2021 and additional briefs on or before March 24, 2021. On March

17, 2021, the Defendants filed a Memorandum of Law.  On March 18, 2021, one day after the

deadline, the Trustee filed a Memorandum of Law.  On March 24, 2021, the Defendants filed a

Memorandum of Law in Opposition to the Trustee's Brief.  The Trustee declined to file an

additional memorandum of law and the sole testimony the Trustee relies on is the Rule 2004

---

[1] Roslyn, LLC is the successor in interest to Elias Chalet, LLC.

deposition transcript of Beth Leff.  All the exhibits submitted by the parties have been admitted and are part of the record.  Thereafter, the matter was marked submitted.

## Facts

The following facts are taken from the Debtor's petition and schedules, the Joint Pretrial Memorandum dated March 4, 2021 [ECF No. 12] and the Rule 2004 deposition transcript of Beth, which is submitted as an attachment to the Defendants' Memorandum of Law. [Defs.' Mem., ECF No. 14].  The Debtor is the 100% owner of over fifteen businesses, including Quest Receivables, LLC, [Case No. 8-19-73377, ECF No. 95], all of which are valued at zero by the Debtor. Beth is married to the Debtor.[2]  During the relevant time period, the Debtor and Beth maintained a joint bank account at First National Bank of Long Island (the "Joint Account"). Beth testified that she worked, and continues to work, for the Debtor's companies and while paychecks were issued solely to the Debtor by Quest Receivable Services, LLC, she was entitled to half of each paycheck issued. [Beth Dep. 10:13-18, 11:8-20]. According to Beth, the paychecks from Quest Receivable Services, LLC are directly deposited into the Joint Account.[3] [Beth Dep. 22:12-25, 23:1-9]. Despite Beth's claim of entitlement to half of each such paycheck, the petition and schedules reflect that Beth was not employed on the Petition Date. [Case No. 8-19-73377, ECF No. 1].

Ruth Litt ("Ruth") is the sister of Beth.  On March 7, 2014, Beth executed an apartment application with the Defendants as lessors, in which she claimed to have an annual income of

---

[2] As of May 2019, through the Petition Date, Beth lived with her husband, the Debtor, and their two daughters. [Beth Dep. 13:7-12].

[3] In the Joint Pretrial Memorandum, the parties agree that Beth did not earn a salary that was reported to the Internal Revenue Service. However, Beth testified that in 2017, she reported income on a joint tax return in the amount of $128,000 in wages, salaries, and tips that was attributable to both herself and the Debtor. [Beth Dep. 69:7-14]. Beth does not recall whether she ever received a W-2 in her name. [Beth Dep. 69:15-21].

$125,000.00 and listed the Joint Account with the Debtor ("Beth's Application"). On March 9, 2014, in connection with Beth's Application, Ruth executed an apartment application with the Defendants. Ruth represented to the Defendants that she had an annual income of $120,000.00 but she did not maintain a checking account. On March 12, 2014, Beth and Ruth executed a lease and rider ("First Lease"), and prepaid rent in the amount of $33,156.00. On April 1, 2015 and April 1, 2016, Beth and Ruth renewed the First Lease. On March 9, 2017, Beth and Ruth executed a lease and rider ("Second Lease") in connection with apartment application dated March 21, 2017. On March 19, 2018, Beth and Ruth renewed the Second Lease.

Beth did not reside in any apartment unit in connection with the First Lease or the Second Lease (collectively, the "Leases"). However, Beth, as co-signor, was granted use and occupancy rights under the Leases. According to Beth's testimony, every month she collected approximately $2,500 in cash from Ruth for the lease payments and deposited it into the Joint Account. [Beth Dep. 28:5-21, 30:11-25]. Beth paid rent to the Defendants pursuant to the Leases by means of checks issued from the Joint Account[4] (the "Transfers"). [Beth Dep. 30:13-25, 31:1-3]. Ruth also occasionally gave Beth cash to deposit into the Joint Account, from which Beth would pay Ruth's PSE&G bill. [Beth Dep. 38:13-18]. In addition to the paychecks from Quest Receivable Services, LLC and the deposits from Ruth, the Joint Account also contained funds Beth obtained directly from the Debtor. On several occasions the Debtor handed Beth cash to deposit into the Joint Account. [Beth Dep. 22:12-25, 23:2-13]. Beth testified she handles the day-to-day banking and issues most of the checks on the Joint Account. [Beth Dep. 21:23-25, 22:2-11]. Beth testified she could not quantify the extent to which the Debtor wrote checks from the Joint Account. [Beth Dep. 21:17-25, 22:1-11].

---

[4] Payments generally ranged from $2,430.00 to $2,940.00, except for one payment in the amount of $8,235.00. [*See* Compl. ¶ 17].

The evidentiary record provided by the Trustee is sparse and inconclusive as to several critical aspects.  In the complaint, the Trustee alleges that the Transfers at issue total $88,831.79, but the last of the thirty-two transfers listed in the complaint occurred on May 13, 2019, which is after the Petition Date.  Therefore, this last transfer in the amount of $2,475.00 is not subject to recovery as a prepetition fraudulent conveyance.

 Moreover, the Trustee did not provide copies of the checks for each of the remaining thirty-one transfers; only twenty-nine checks issued to the Defendants were produced, with no corresponding bank statements.  However, the Defendants admit in their answer to the complaint that they received the Transfers. Nevertheless, the checks alone only establish that the Defendants received the Transfers from the Joint Account.  The Trustee produced no copies of bank statements or checks showing where the money deposited into the Joint Account originated, nor is there a breakdown of the extent to which any transfers outside of the payments made to the Defendants were for the benefit of the Debtor or Beth, or some other party.  As a result, it is impossible to calculate on a month-by month basis how the funds in the Joint Account were allocated.

The Defendants did provide some bank statements that the Court can consider, but they do not provide a sufficient record to determine whether the Transfers were made with funds attributable to the Debtor's interest or Beth's interest.  These bank statements reflect that checks issued on the Joint Account were made out to various entities, some of which appear to have benefitted the Debtor and Beth jointly.[5] The deposits made into the Joint Account during each of

---

[5] Beth testified that she utilized the Joint Account to make sporadic payments on the home mortgage, [Beth Dep. 13: 13-25, 14:1-5], payments to PSE&G for the home account, [Beth Dep. 38:7-12], and payments to a family doctor. [*See* Defs.' Ex. B]. Checks were also issued for various personal services. For example,  Beth had dresses made for herself and her daughters totaling $7,685.00, [Beth Dep. 39, 40], Beth wrote a check to Stephanie Andrew Studio for $6,030.00 and a check to the Garden City Hotel for $17,000 for her daughter's Bat Mitzvah, [Beth Dep. 41:18-25, 42:1-3]. There were also multiple checks signed by Beth issued to Sari Sunshine totaling over $60,000 for home decorating services. [Beth Dep. 42-46].

the statement periods provided by the Defendants came from a number of sources, including the

Debtor's paycheck from Quest Receivable Services, LLC, funds provided by the Debtor and

funds provided by Ruth.  [Beth Dep. 22:12-25, 23:2-13, 24:2-6, 28:5-17; *see also* Defs.' Ex. B].

## Discussion

The Trustee seeks to avoid and recover the Transfers pursuant to New York Debtor and

Creditor Law ("NYDCL") §§ 273, 275, 276 and 278 and 11 U.S.C. §§ 544, 550.[5] In the event the

Trustee is successful under § 276 of the NYDCL, the Trustee seeks legal fees pursuant to

NYDCL § 276-a. The Trustee also seeks to recover the Transfers under the theory of unjust

enrichment. In addition, the Trustee seeks to avoid the Transfers pursuant to 11 U.S.C. § 548, as

indicated in the Trustee's Memorandum of Law, but this claim was not included as a cause of

action in the complaint and the Trustee did not seek leave to amend the complaint.  For the

reasons set forth below, the Trustee has failed to establish by a preponderance of the evidence

that he is entitled to judgment in his favor with respect to each cause of action.  The Court will

first review the claims that can be dismissed outright and then will consider each remaining

claim.

### A.  <u>First and Second Causes of Action</u>

### 1.  First Cause of Action: Improper claim under 11 U.S.C. § 544

The Trustee's first cause of action seeks relief solely pursuant to Bankruptcy Code § 544.

This claim is insufficiently pled and must be dismissed. Section 544(b) allows "the trustee [to]

avoid any transfer of an interest of the debtor in property . . . *that is voidable under applicable*

---

[5] The total amount of prepetition transfers is $88,831.79 less $2,475.00, or $86,356.79.  Therefore, the term Transfers as used in the remainder of the decision applies to the $86,356.79 amount.

*law*." 11 U.S.C. § 544 (emphasis added).  Section 544(b) alone does not create a substantive right to avoid transfers but exist only to the extent applicable state law recognizes a transfer is avoidable.  *See Wedtech Corp. v. Denlinger (In re Wedtech Corp.)*, 121 B.R. 286, 292 (Bankr. S.D.N.Y. 1990). The Trustee cannot rely solely on § 544 to avoid a transfer, "[i]t must be used in tandem with some other law."  *Kiester v. Mizrahi (In re Mizrahi)*, 179 B.R. 322, 327 (Bankr. M.D.Fla. 1995). The Trustee does not identify the applicable state law he seeks to utilize pursuant to § 544 in the first cause of action; therefore, it shall be dismissed.

### 2.  Second Cause of Action: Unjust Enrichment

The Trustee alleges the Debtor received no consideration for the Transfers to the Defendants and seeks to recover the amount by which the Defendants were unjustly enriched. The unjust enrichment claim must be dismissed. To prevail on an unjust enrichment claim, the plaintiff must show that the defendant benefited at the plaintiff's expense and that good conscience and equity require restitution. *See Golden Pac. Bancorp. v. Fed. Deposit Ins. Corp.*, 273 F.3d 509, 519 (2d Cir. 2001). "Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched." *Simonds v. Simonds*, 45 N.Y.2d 233, 242, 380 N.E.2d 189, 194 (1978) (citation omitted). Privity is not required to assert an unjust enrichment claim, but a relationship must exist between the parties that is not "too attenuated." *See Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, 973 N.E.2d 743 (2012). New York courts have not outlined a test for determining whether a relationship is "too attenuated" but have found that a connection between the parties is too attenuated when the parties simply had no dealings with each other, or if there is no relationship between the parties that could have caused reliance or inducement. *See id.* at 516-17.

8

Each of the twenty-nine checks introduced into evidence were executed by Beth.  As co-signors, Beth and Ruth were granted certain use and occupancy rights in the apartment unit covered by the Leases.  The Debtor, on the other hand, is not a signatory to the Leases nor was he granted any rights under the Leases. There is no evidence to support a finding that the Debtor and the Defendants had any contact or interactions. Beth's Application disclosed the Joint Account; however, knowledge that the Transfers may come from an account partially owned by the Debtor alone is insufficient to create a relationship. *See id.* at 517-18 ("[M]ere knowledge that another entity created [a benefit without being compensated] is insufficient to support a claim for unjust enrichment."). The Trustee has failed to show that the Debtor and the Defendants had a relationship that could have caused inducement or reliance. Based on the record, the relationship between the Debtor and the Defendants is too attenuated to support an unjust enrichment claim against the Defendants.

### B. **Amendment of the Complaint under Federal Rule of Civil Procedure 15(b)**

As stated above, the Trustee's Memorandum of Law discusses avoidance pursuant to § 548, yet, this action was omitted from the complaint. The Trustee did not seek to amend the complaint to add the § 548 claim, but the Court will construe the assertion of the § 548 claim as a request to amend the complaint pursuant to Federal Rule of Civil Procedure 15(b) ("Rule 15(b)"). *See Silverstein v. Penguin Putnam, Inc.*, 522 F.Supp.2d 579, 603 (S.D.N.Y. 2007).

Rule15(b) is made applicable to bankruptcy cases by Rule 7015 of the Federal Rules of Bankruptcy Procedure. Rule 15(b)(2) provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Fed.R.Civ.P. 15(b)(2).  The judge may allow for such an

amendment by motion or *sua sponte*. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1493, at 461 (1971). Whether to allow parties to "amend their pleadings to conform to the proof" lies within the bankruptcy court's sound discretion. *See Vermont Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 279 (2d Cir. 1996). The essential issues in considering whether to allow an amendment are whether the new claims were tried by the parties' express or implied consent and whether the defendant would be prejudiced by the implied amendment. *See Royal Am. Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1017 (2d Cir.1989). There is no evidence that the Defendants expressly consented to try the issue of fraudulent transfer pursuant to § 548. Therefore, the Court may only consider a claim under § 548 if there is sufficient evidence of implied consent by the Defendants.

For purposes of Rule 15(b), implied consent may arise from one of two sets of circumstances. First, implied consent can be found where a party fails to object to the introduction of evidence at trial that is relevant to the issue. However, "[t]hat such evidence, relevant to both pled and unpled issues, was introduced without objection does not imply consent to trial of the unpled issues, absent some obvious attempt to raise them." *Luria Bros. & Co. v. Alliance Assur. Co.*, 780 F.2d 1082, 1089 (2d Cir. 1986); *see also Quillen v. Int'l. Playtex, Inc.,* 789 F.2d 1041, 1044 (4th Cir.1986) ("A court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim."). Second, implied consent can be found where a claim is introduced outside the complaint and is treated "as having been pleaded, either through [the party's] effective engagement of the claim or through his silent acquiescence."   *Rodriguez v. Doral Mortg. Corp*., 57 F.3d 1168, 1172 (1st Cir. 1995). Presentation of claims beyond the complaint without objection is considered an informal amendment of the complaint. *See Action Mfg., Inc. v.*

*Fairhaven Textile Corp.*, 790 F.2d 164, 167 (1st Cir. 1986). Implied consent may be found if the claim is introduced in a post-trial submission. *See United States v. Texas*, 523 F.Supp. 703, 722 (E.D.Tex. 1981) ("Even the injection of new issues by parties, without objection, in their post-trial submission has been deemed to constitute implied consent to resolve those issues under Rule 15(b).") (citing *Rath Packing Co. v. Becker*, 530 F.2d 1295 (9th Cir. 1975), *aff'd on other grounds sub nom. Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S. Ct. 1305, 51 L.  Ed. 2d 604 (1977)). However, the overall record must reflect that the opposing party was aware of the claim and that the issues were tried. *See Luria Bros. & Co.*, 780 F.2d at 1089-90 (stating implied consent requires "awareness that the issue has been introduced"); *see also Insure One Indep. Ins. Agency v. Koestner*, 198 B.R. 709, 714 n. 3 (Bankr. N.D.Ill. 1996) (ruling a party's failure to object to issue brought up outside of pleading alone is not enough for implied consent). "The purpose of Rule 15(b) is to allow the pleadings to conform to issues actually tried, not to extend the pleadings to introduce issues inferentially suggested by incidental evidence in the record." *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1086 (2d Cir. 1977). The principal limitation upon finding implied consent under Rule 15(b) is where its recognition would result in substantial prejudice to a party. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000). "For the defendant to be prejudiced by the Rule 15(b) amendment, a party's failure to plead an issue that it later presents must disadvantage its opponent in its case." *In re Cross Media Mktg. Corp.*, 367 B.R. 435, 452 (Bankr. S.D.N.Y. 2007) (citing *New York State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 104-05 (2d Cir.1996)).

There is no mention of § 548 in the Joint Pretrial Memorandum.  However, the Defendants, in their Memorandum of Law, acknowledge the § 548 claim by asserting that their arguments against the Trustee's NYDCL claim also apply to the § 548 claim. [Defs.' Mem. 20,

ECF No. 14]. Moreover, the Trustee's Memorandum of Law introduces § 548(a)(1)(A), to which the Defendants do not object in their Opposition. The Defendants' acknowledgment of the § 548 claim in their own brief together with their acquiescence to the Trustee's explicit introduction of the claim leads this Court to conclude that the § 548(a)(1)(A) claim was tried by implied consent. Further, recognition of the § 548(a)(1)(A) claim will not prejudice the Defendants. The NYDCL § 276 parallels § 548(a)(1)(A) and the two statutes have been interpreted similarly by the courts. *See In re Sackman Mortg. Corp.,* 158 B.R. 926, 938 (Bankr. S.D.N.Y.1993)  ("DCL § 276 and § 548(a)(1) of the Bankruptcy Code are similar and provide that a conveyance made with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud present or future creditors, is fraudulent as to present and future creditors.").  Evidence relevant to a § 548(a)(1)(A) claim also coincides with the pleaded claims under the NYDCL § 276. The Defendants could not be expected to offer new evidence if the case were to be retried and will not been disadvantaged. Therefore, the Court deems the pleadings to be amended to include the § 548 (a)(1)(A) claim.

### C.  Remaining Causes of Action

The remaining causes of action, including the unpled § 548(a)(1)(A) claim, are all fraudulent conveyance claims.  These claims are based on the premise that the Debtor's property was transferred to the Defendants, and either the Debtor received no benefit from the transfers or the Debtor made the transfers with the intent to hinder, delay or defraud his creditors.  When a trustee pursues a cause of action under fraudulent transfer law there are two issues that must be examined: the first is a threshold issue concerning whether the transfer itself is avoidable, the second involves liability to the estate. Once a transfer is avoided, § 550 allows the trustee to

recover, "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). Whether the Defendants were the initial transferees or were the second in a chain of transfers, from the Debtor to Beth and then to the Defendants. is of critical importance in this case.

In a case where there are multiple transferees linked to a transfer that originated from a debtor, the statutory notion of reasonably equivalent value necessitates the identification of the "initial transferee." *See Leonard v. Mountainwest Fin. Corp. (In re Whaley)*, 229 B.R. 767, 772 (Bankr. D.Minn. 1999). Avoidability requires courts to gauge the value the first transferee exchanged with a debtor. So, although a trustee may pursue recovery only against a subsequent transferee, "the transfer that the Trustee must prove is avoidable is the initial transfer of property by the debtor, not any subsequent transfers of that property to the defendants from whom the Trustee seeks recovery." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Secs.)*, 501 B.R. 26, 29-30 (Bankr. S.D.N.Y. 2013); *see also In re Picard*, 917 F.3d 85, 97, 98 (2d Cir. 2019) ("[W]hen a trustee seeks to recover subsequently transferred property under § 550(a), the only transfer that must be avoided is the debtor's initial transfer.").

In the complaint, the Trustee assumes that all of the funds deposited into the Joint Account constitute property of the Debtor's estate and skips over the effect, if any, the transfer of the Debtor's funds **into** the Joint Account had with respect to the ownership of the funds. According to the complaint, the funds remained property of the Debtor's estate once deposited into the Joint Account, and therefore the Defendants received the Debtor's funds as initial transferees. Even if the Court were to find that all of the funds deposited into the Joint Account originally were the

Debtor's property, the Court must determine the effect of depositing these funds into a joint checking account of spouses under applicable law.

### 1.   Whether the Deposits Into the Joint Account are Transfers

Section 101(54) of the Bankruptcy Code defines a "transfer" as any "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property; or an interest in property." 11 U.S.C. § 101(54). The nature of a debtor's right to property is determined by applicable state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Under New York Banking Law § 675, unless there is fraud or undue influence, the deposit of funds into a joint bank account is "prima facie evidence of the intention of both depositors or shareholders to create a joint tenancy." *In re Carella*, 340 B.R. 710, 711 (Bankr. W.D.N.Y. 2006). The establishment of a joint bank account creates a rebuttable presumption that each joint tenant named on the account is possessed of the whole of the account, which renders the account vulnerable to levy of a money judgment by a creditor of one of the joint tenants. *See Drucker v. Grodetzky (In re Grodetzky)*, 495 B.R. 223, 226 (Bankr. E.D.N.Y. 2012); *Viggiano v. Viggiano*, 136 A.D.2d 630, 630, 523 N.Y.S.2d 874, 875 (2d Dep't 1988). Upon creating a joint bank account, it is presumed the creator made an irrevocable gift of one-half of the funds therein to the other joint owner and "each tenant [has] a present unconditional property interest in an undivided one half of the money deposited, **regardless of who puts the funds on deposit.**" *Parry v. Parry*, 93 A.D.2d 989, 990, 461 N.Y.S.2d 616 (4th Dep't 1983) (emphasis added); *see also TD Bank, N.A. v. Miller*, 18 Civ. 10608 (VM), 2020 WL 5441323, at *7 (S.D.N.Y. Sept. 9, 2020); *Matter of Bobeck*, 143 A.D.2d 90, 92, 531 N.Y.S.2d 340 (2d Dep't 1988). A joint tenant to a bank account has the right

to alienate his own one-half interest throughout the life of both tenants. *See Gotte v. Long Island Trust Co*., 133 A.D.2d 212, 215, 518 N.Y.S.2d 991, 994 (2d Dep't 1987). Once a joint tenancy arises it cannot be canceled unilaterally and where one joint tenant withdraws more than his or her half interest, the other joint tenant has the right to recover such excess during both of their lifetimes, *see Parry v. Parry*, 93 A.D.2d at 990, unless the tenant is given consent to withdraw in excess of his or her moiety. *See Walsh v. Walsh*, 29 A.D.2d 991, 992, 290 N.Y.S.2d 115, 117 (2d Dep't 1968).

Once the presumption of joint tenancy arises, the burden shifts to the opposing party to submit clear and convincing evidence that no joint tenancy was intended or provide substantial circumstantial proof that the joint account was opened for convenience only. *See In re Carella*, 340 B.R. at 711; *Matter of Coddington,* 56 A.D.2d 697, 698, 391 N.Y.S.2d 760, 761-62 (3d Dept.1977). New York courts generally consider the totality of circumstances to assess whether the depositor of the funds intended to create a joint tenancy, or it was just for convenience purposes. *TD Bank, N.A. v. Miller*, 2020 WL 5441323, at *8. "A joint account may fulfill the requirement of 'convenience' in several ways. Some depositors may seek the convenience of a second party to handle transactions, or the convenience of a 'stand-by' arrangement in the event of an unforeseen calamity. . . . In all instances, the key issue is whether a party truly intends to transfer ownership, or merely seeks a short-hand method to accomplish some other legitimate purpose." *In re Carella*, 340 B.R. at 712 (finding the presumption of joint tenancy rebutted where father testified he intended to retain control of the account and gave instructions that his son was to access the funds only upon the father's direction); *but see In re Grodetzky*, 495 B.R. at 227 (stating the presumption of ownership was not rebutted where the use of the accounts was not so limited as to be opened merely as a matter of convenience).

The opening of the Joint Account in the names of both the Debtor and Beth is *prima facie* evidence of their intent to create a joint tenancy. Unless this presumption is rebutted by clear and convincing evidence, the Debtor and Beth are deemed joint tenants to the Joint Account and one-half of each deposit is deemed gifted to the non-depositor.

Beth testified that she deposited funds into the Joint Account that that she received from the Debtor, [Beth Dep. 22:12-25, 23:2-13], and Ruth [Beth Dep. 26:24-25, 28:15-21, 30:13-25]. It follows that the Joint Account consisted of funds that did not all originate from the Debtor, which weighs against finding it was a mere convenience account for the Debtor. *See In re Grodetzky*, 495 B.R. at 227 (finding that the commingling of funds in a joint bank account, and the debtor's use of the funds for the benefit of herself and her daughter, was evidence that the form of the account was not merely a matter of convenience). Moreover, Beth testified that she issued most of the checks connected to the Joint Account, [Beth Dep. 22:2-11], and all of the checks admitted into evidence were signed by Beth. Several of the checks were made out to third parties for various services and obligations, which shows that the funds were not used solely for expenses of the Debtor.[6]  There is no evidence that Beth's use of the Joint Account was subject to the Debtor's sole direction or only for the Debtor's benefit. Therefore, while the bulk of the Transfers may have come from the Debtor's funds, any deposits of the Debtor's funds into the Joint Account constitute transfers to Beth with respect to half of each such transfer.

As a result, even if the Court were to agree with the Trustee that all of the funds deposited into the Joint Account originally belonged to the Debtor, the deposit of these funds into the Joint Account resulted in a transfer of half of the funds to Beth.  The Trustee has conceded this much in his Memorandum of Law [Trustee's Mem. 12]. Therefore, as to half of the deposits during the

---

[6] *See supra* note 5.

relevant time period, there was a transfer to Beth as an initial transferee.  As a matter of law, she had the right to put half of the funds in the Joint Account to her own use. To the extent the funds that belonged to her as a matter of law were then transferred to the Defendants, they would be the immediate transferees, not the initial transferees.

### 2. Whether Beth is the Initial Transferee of the Debtor's Share of Funds in the Joint Account

Even the remaining half of the funds in the Joint Account, which constituted the Debtor's property, may have been transferred to Beth as the initial transferee depending upon the facts and circumstances surrounding the Debtor's and Beth's use of the funds in the Joint Account. While the Bankruptcy Code does not define "initial transferee," courts have adopted certain tests to determine who constitutes an initial transferee. In doing so, many courts distinguish an initial recipient, i.e., the first set of hands to touch the funds, from an initial transferee. *See Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 56 (2d Cir. 1997).

The Seventh Circuit in *Bonded* established the "dominion and control" test stating  "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988). The Second Circuit in *Finley* concurred with the approach in *Bonded* and adopted the "mere conduit" test. *See In re Finley,* 130 F.3d at 56. "[The mere conduit test] frames *Bonded's* 'dominion and control' test in the negative. Rather than stating that a party is an initial transferee if it exercises 'dominion and control' over the funds, the Second Circuit states that a party is not an initial transferee if it was a mere conduit of the funds." *In re Big Apple Volkswagon, LLC*, No. 11-11388, 2016 WL 1069303, at *16 (Bankr. S.D.N.Y. Mar. 17, 2016).

In *In re Finley*, an insurance broker was held not to be an initial transferee based on the fact it merely transferred premiums from a policy holder to an insurance company and lacked discretion to direct the funds in any other way. *In re Finley*, 130 F.3d at 59. The Second Circuit ruled the insurance broker was a "mere conduit" with respect to the funds because it "had no discretion or authority to do anything else but transmit the money, which is just what it did." *Id.* A "mere conduit" has been described as an entity with "no dominion or control over the assets; rather, it is a party with actual or constructive possession of the asset before transmitting it to someone else. Mere conduits can do no more than transmit a transferor debtor's funds to a transferee." *Authentic Fitness Corp. v. Dobbs Temp. Help Servs., Inc. (In re Warnaco Grp.)*, *Inc.*, No. 01 B 41643(RLB), 2006 WL 278152, at *6 (S.D.N.Y. Feb. 2, 2006).

The Trustee argues that the deposit of the Debtor's funds into the Joint Account does not render Beth an initial transferee.  According to the Trustee, Beth was a mere conduit of the Transfers to the Defendants, making the Defendants the initial transferees. However, at any point in time, Beth was the initial transferee of half of the funds in the Joint Account for the reasons discussed above.  With respect to the other half of the funds in the Joint Account, the conduct of Beth and the Debtor would determine Beth's status.

There are serious impediments to finding Beth was a mere conduit, as opposed to an initial transferee of the Transfers to the Defendants. There is no evidence that Beth took direction from the Debtor regarding the transfers to the Defendants.  There is no deposition transcript of the Debtor, and therefore there is no evidence that the Debtor even knew about the Transfers to Defendants, let alone directed that the checks be issued to the Defendants.  Beth testified that she was almost exclusively the only party who drew checks on the Joint Account, [Beth Dep. 22:2-11], and that she was unaware the extent, if any, to which the Debtor signed checks from the

Joint Account.  [Beth Dep. 21:17-25]. The record is barren of evidence regarding the Debtor's use of the Joint Account. It appears Beth used the Joint Account to pay for a variety of expenses, many of which benefited the Debtor and their children. For example, Beth used the funds in the Joint Account for mortgage payments, for doctor visits, [Defs.' Ex. B, Joint Account Statement], to pay a dressmaker for herself and her daughter, [Beth Dep. 39, 40], for home decorating services, [Beth Dep. 42-46], for services related to her daughter's party. [Beth Dep. 41:18-25, 42:1-3]. The available checks are all signed by Beth and there is nothing demonstrating the Debtor directed any of these payments. As far as the record shows, Beth could have used the funds for whatever she wished without consent from the Debtor. There is no evidence that the Debtor had sole control over how the funds in the Joint Account were spent. Based on the record, it seems Beth exercised autonomy over the funds to her benefit, rendering her an initial transferee of any and all transfers she made from the Joint Account, regardless of whether the funds came from her half interest or the Debtor's half interest.

Because the Debtor transferred half of the funds in the Joint Account to Beth upon their deposit and because Beth exercised sufficient dominion and control over the remaining half of the funds to satisfy the Second Circuit standard, Beth is an initial transferee of any transfers made to the Defendants from the Joint Account.

### 3.  Consequences of Deeming the Defendants Immediate Transferees

### a.  The Effect of the Release of Beth by the Trustee

As stated above, the Settlement Agreement released Beth from any and all potential claims and causes of action held by the Trustee, whether or not such claims were related to the action the Trustee brought against Beth. The Defendants argue that the Trustee is precluded from recovering from the Defendants as subsequent transferees because the Trustee released Beth, the

adjudged initial transferee, from all liability without first obtaining a judgment of avoidance against her. The Court disagrees.

Bankruptcy Code § 550 allows a trustee to recover a transfer to the "extent it is avoided." 11 U.S.C. § 550(a). However, courts have not interpreted this phrase uniformly. Some courts view this language as requiring a trustee to first avoid an initial transfer in order to recover from a subsequent transferee. *See, e.g., Weinman v. Simons (In re Slack–Horner Foundries Co.)*, 971 F.2d 577, 580 (10th Cir.1992) ("[I]n order to recover from a subsequent transferee the trustee must first have the transfer of the debtor's interest to the initial transferee avoided under § 548."); *Greenwald v. Latham & Watkins (In re Trans-End Tech., Inc.)*, 230 B.R. 101, 105 (Bankr. N.D. Ohio 1998) ("[B]ased upon the plain language of 11 U.S.C. § 550, the Court finds that a prerequisite to recovery from any transferee is that the initial transfer must first be avoided rather than merely proven to be avoidable.").

The majority of courts adopt the view that a trustee need only prove the initial transfer is avoidable. 5 COLLIER ON BANKRUPTCY, ¶ 550.02[1] at 550–6 (16th ed. 2011) ("The better view, adopted by the majority of courts is that ... a recovery may be had from a subsequent transferee without suing the initial transferee."); *see, e.g., IBT Int'l Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 708 (11th Cir. 2005) ("[W]e hold that Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee."); *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),* 389 B.R. 721, 735 (B.A.P. 9th Cir. 2008) ("[W]e conclude that Congress intended avoidance as one remedy and recovery as another. Thus, we hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Secs.)*, 480 B.R. 501, 520 (Bankr. S.D.N.Y. 2012) (*BLMIS*) (ruling that section 550 only

requires the trustee prove that initial transfer is avoidable, "it does not require a trustee to litigate a final judgment of avoidance against initial transferees before seeking recovery from subsequent transferees"); *In re Giant Gray, Inc.*, No 18-31910, 2020 WL 6226298, at *10 (Bankr. S.D.Tex. Oct. 22, 2020) (finding section 550 does not require trustee to bring an action against the initial transferee to recover against defendants as mediate transferees).

In discerning the implications of § 550, the Court must first look at the plain language, and if the meaning is clear, the court is generally bound to enforce the statute accordingly. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole*." K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). Legislative history may be considered only when "the plain statutory language is ambiguous or would lead to an absurd result." *Universal Church v. Geltzer,* 463 F.3d 218, 223 (2d Cir. 2006). Section 550 provides:

> [T]o the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from ... the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a)(2).

"Avoided" is the past tense of the verb "avoid." *Avoided*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/thesaurus/avoided (last visited June 17, 2021). "Avoid" means "to render void," BLACK'S LAW DICTIONARY (11th ed. 2019), which in turn means "[t]o render of no validity or effect; to annul." *Id.* Strictly looking at the text, a trustee may recover from a subsequent transferee only if the initial transfer is first actually *avoided*.

However, such a literal interpretation is nonsensical in the context of the section as a whole. Section 550 authorizes recovery from a transferee, distinct from § 544 and § 548, which govern the avoidance of a transfer. Although avoidance and recovery statutes must be read in tandem, *see In re Picard*, 917 F.3d at 98, nowhere in the Bankruptcy Code does it state recovery under § 550 is dependent on the success of an actual avoidance action against the initial transferee. Mandating actual avoidance from initial transferees pursuant to § 550 conflates avoidance and recovery sections. *See In re Int'l Admin. Servs.*, 408 F.3d at 706; *see also In re Madoff Secs.*, 501 B.R. at 35. Because the language "to the extent that a transfer is avoided" is "ambiguous, it is appropriate to look beyond the plain language of the statute." *In re Int'l Admin. Servs., Inc*., 408 F.3d at 707.

A narrow interpretation of § 550 is at odds with Congressional intent. *See In re AVI, Inc.,* 389 B.R. at 735 (stating a trustee would have "little incentive to partially settle avoidance actions, thereby running up the costs of litigation and causing further delay"); *see also Gropper v. Unitrak, S.A. (In re Fabric Buys of Jericho, Inc.)*, 33 B.R. 334, 336-37 (Bankr. S.D.N.Y. 1983) ("By passing section 550, Congress hoped to preclude multiple transfers or convoluted business transactions from frustrating the recovery of avoidable transfers. Such recovery problems existed under the former Bankruptcy Act of 1898."). The legislative history of Section 550 provides the language, "to the extent that a transfer is avoided," means that liability is not imposed on a transferee to the extent the transferee is protected by another provision, such as § 548(c) and § 549(b). *See* H.R. Rep. No. 95-595, at 375-76 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6331-6332; S. Rep. No. 95-989, at 90 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876 ("The segment 'to the extent that' is merely "designed to incorporate the protection of transferees found in proposed 11 U.S.C. 549(b) and 548(c)."). Sections 548(c) and 549(b) recognize some

transactions may only be avoided in part, meaning the transfer will be avoidable only to the extent of the excess. *See In re Giant Gray, Inc.* 2020 WL 6226298, at *10 ("All the phrase to the extent that a transfer is avoided specifies is that any recovery from the [defendants] to which [trustee] proves himself entitled will be limited by certain subsections (aka safe harbor provisions) within the avoidance sections that limit the amount of a transfer that could be statutorily avoided.") (internal quotations omitted).

In addition, the Defendants are not signatories to the Settlement Agreement, nor are they the intended beneficiaries of the Settlement Agreement.  Under New York law, a third party may only seek to enforce the terms of a contract where the parties to the contract intend to benefit such third party and the circumstances support such intent. *See Staff Mgmt. Solutions, LLC v. Wells Fargo Bank, N.A. (In re Corp. Res. Servs., Inc.)*, No. 20-3069, 2021 WL 2272834, at *1 (2d Cir. June 3, 2021); *Encore Lake Grove Homeowners Ass'n, Inc. v. Cashin Assocs., P.C.*, 111 A.D.3d 881, 882-83, 976 N.Y.S.2d 143 (2d Dep't 2013). The intent of the parties to the Settlement Agreement must be examined to determine whether the Settlement Agreement releases entities such as the Defendants from liability. *See In re Corp. Res. Servs., Inc.,* 2021 WL 2272834, at *2.

The Defendants were not parties to the Settlement Agreement, which was executed by the Trustee, Beth and the Debtor. The Settlement Agreement provides for the Trustee's release of all claims against Beth and the Debtor that the estate has or that may have. There is no release by the Trustee of any claims with respect to the Defendants. There is nothing in the Settlement Agreement that indicates the release extends to any subsequent transferees nor do the surrounding circumstances support a finding that the extinguishment of liability should flow to parties beyond those in privity of the Settlement Agreement.

For the reasons discussed above, the Court does not view § 550 as requiring a trustee to first avoid a transfer as against an initial transferee to recover from a subsequent transferee.  The trustee

only has the obligation the prove the initial transfer is avoidable. Thus, the terms of the Settlement Agreement between the Trustee and Beth in a separate fraudulent conveyance action regarding the alleged transfer of real property do not bar the Trustee from recovering from the Defendants in this adversary proceeding.

### b.   Application of Section 550(b) of the Bankruptcy Code

Under § 550(a)(1), an "initial transferee" is strictly liable for an avoided transfer. *See Red Dot Scenic Inc. v. Tese–Milner (In re Red Dot Scenic, Inc.)*, 351 F.3d 57, 58 (2d Cir. 2003). If a fraudulent transfer is sufficiently avoided the trustee can seek recovery from a subsequent transferee unless § 550(b)(1) applies, as discussed below. Section 550(b)(1) shields defendants as immediate transferees from liability if they received the transfers in good faith, for value and without knowledge that the transfers could be avoided by the trustee. 11 U.S.C. § 550(b)(1); *Bonded Fin. Servs., Inc.*, 838 F.2d at 896. The majority of courts place the burden of proving the defense on the subsequent transferee, who is fully insulated from liability of the three requirements of § 550(b)(2) are met. *See* 11 U.S.C. § 550(b)(2); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff)*, 590 B.R. 200, 204-05 (Bankr. S.D.N.Y. 2018) (providing examples).

### i.     Value

Value is measured by what the transferee gave up in the transaction and it need not be given to the debtor to qualify. *See Brown Publ'g Co. Liquidating Trust v. AXA Equitable Life Ins. Co. (In re Brown Publ'g Co.)*, 492 B.R. 610, 619 (Bankr. E.D.N.Y. 2013*); Genova v.*

*Gottlieb (In re Orange County Sanitation, Inc.)*, 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997). It is "merely consideration sufficient to support a simple contract, analogous to the 'value' required under state law to achieve the status of a bona fide purchaser for value." 5 COLLIER ON BANKRUPTCY ¶ 550.03[1] at 550-25 (16th ed. 2019). The Defendants conferred upon Beth occupancy rights in connection with the apartment unit covered by the Leases in exchange for the rental payments thereunder. Beth did not reside in the apartment, but she had the legal right to if she wished. Therefore, the first element is satisfied.

### ii.    Good faith

Good faith is not a defined term under the Bankruptcy Code but an objective, reasonable person test usually applies to determine whether the transferee took in good faith. *See Marshall v. Picard* (*In re Bernard L. Madoff Inv. Secs. LLC*), 740 F.3d 81, 90 n. 11 (2d Cir. 2014); *Mazer–Marino v. S.J.P.B., Inc.* (*In re Thakur*), 498 B.R. 410, 420-21 (S.D.N.Y. 2013). Good faith depends on "whether the transferee had information that put it on inquiry notice that the transferor was insolvent or that the transfer might be made with a fraudulent purpose." *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439 B.R. 284, 310 (S.D.N.Y. 2010).

The lease applications executed by Beth and Ruth contained information showing both Beth and Ruth had substantial income to cover the lease obligations and Ruth was forthright in disclosing that she did not have a checking account. The lease obligations under the First Lease were fully met. There is no record of what further steps, if any, the Defendants took to examine the bona fides of the rental relationship. Although the Transfers did come from the Joint Account, there is nothing in the record to suggest that the Defendants were aware of any adverse

financial situation the Debtor may have been in during the relevant time periods nor does the record indicate the Defendants had knowledge of such facts that could have put them on notice. There is insufficient evidence to support a finding that the Defendants had any information which would have put them on inquiry notice that the Debtor was insolvent, or that the Transfers were made with a fraudulent purpose. Therefore, the second element is satisfied.

### iii.    Without knowledge transfer could be avoided

The Bankruptcy Code does not define "knowledge," but case law has provided that this element does not require a comprehensive understanding of the facts or certainty of voidability. *See Bonded Fin. Servs., Inc.*, 838 F.2d at 898; *In re Robert Plan of N.Y. Corp.*, 456 B.R. 150, 160-61 (Bankr. E.D.N.Y. 2011). There must only be some knowledge of the possibility of avoidance, meaning the transferee must be aware of facts sufficient to either put him on notice the transfer may be avoided or place him in a position where further inquiry is necessary and would likely lead to the conclusion the transfer might be avoided. *See In re CNB Int'l, Inc*., 393 B.R. 306, 330 (Bankr. W.D.N.Y. 2008) (citing *Mosier v. Goodwin (In re Goodwin)*, 115 B.R. 674, 677 (Bankr. C.D.Cal.1990)). Where a transferee does not have the information required to form an inference of knowledge there is no obligation imposed requiring further investigation of the facts. *See Bonded Fin. Servs., Inc.*, 838 F.2d at 898.

The record does not reflect that the Defendants had any knowledge that the Transfers might be avoidable or were in a position where further investigation would have been necessary. Specifically, there are no facts to suggest any of the required elements of proof in a fraudulent transfer action were known to the Defendants, that is that the Debtor received less than fair consideration from Beth for the deposits; that the Debtor was insolvent at the time; or that the

Debtor could not pay his debts as they came due. The Defendants had no reason to know that the Transfers were the product of previous fraudulent transfers, and there was no basis for the Defendants to infer that an investigation into the actual source of the funds should have been undertaken.  Therefore, the third element is satisfied.

Because the Defendants satisfied each element of the good faith defense pursuant to § 550(b), the Trustee could not recover the Transfers from the Defendants as subsequent transferees even if he adequately established a *prima facie* case as to any of the fraudulent conveyance claims.  However, the Trustee has failed to make his case, as set forth below.

### c.   The Trustee Failed to Plead a *Prima Facie* Case

Although the Defendants would be entitled to the good faith defense if they are deemed immediate transferees, it is important to highlight the fact that recovery from such a subsequent transferee is conditioned on the initial transfer being avoidable. "While the subsequent transfer may indirectly harm creditors by making property more difficult to recover, it is the initial transfer that fraudulently depletes the estate." *In re Picard*, 917 F.3d at 99.  Because the initial transfer is the only transfer that requires a finding of actual or constructive fraud, the Defendants have the right to contest its avoidability. *See BLMIS*, 480 B.R. at 522 (stating the subsequent transferee "will be afforded its due process rights to contest the avoidability of [the] initial transfers); *Dye v. Sachs (In re Flashcom, Inc.)*, 361 B.R. 519, 525 (Bankr. C.D.Cal.2007) ("[A] stipulated or default judgment entered in an avoidance action does not preclude the defendants in a recovery action from disputing the avoidability."). If Beth is found to be the initial transferee, the Trustee must prove that the transfers from the Debtor to Beth are avoidable in connection with the suit against the Defendants because the settlement with Beth did not involve any

determination on the merits as to the initial transfers. *See BLMIS*, 480 B.R. at 520. The Trustee

assumes Beth is the initial transferee and omits any discussion of the avoidability of the initial

transfers to her.  This assumption leaves a gap in the Trustee's presentation, so the Trustee

cannot recover from the Defendants as subsequent transferees regardless of whether they have

established a good faith defense.

Although the Court concludes that (i) Beth is the initial transferee of the Transfers, (ii) the

Trustee has failed to analyze the avoidability of the initial transfers to Beth and (iii) the Defendants

have established a good faith defense as to the Transfers, it is worthwhile to review whether, if

Beth were a mere conduit, the Trustee established a *prima facie* case as to any of the fraudulent

conveyance claims.

### 4.  New York Fraudulent Conveyance Law

#### a.  Seventh and Ninth Causes of Action Based on Actual Fraud

The Trustee seeks to avoid the Transfers based on actual fraud under state law by virtue

of § 544(b) of the Bankruptcy Code. NYDCL § 276 provides "every conveyance made, and

every obligation incurred with actual intent, as distinguished from intent presumed in law, to

hinder, delay or defraud either present or future creditors, is fraudulent as to both present and

future creditors." NYDCL § 276. "[I]t is well accepted that intent to hinder or delay creditors is

sufficient, and intent to defraud need not be proven." *Nisselson v. Empyrean Inv. Fund, L.P., (In re*

*MarketXT Holdings Corp.)*, 376 B.R. 390, 403 (Bankr. S.D.N.Y. 2007) (citing *Shapiro v.*

*Wilgus,* 287 U.S. 348, 354, 53 S.Ct. 142, 77 L.Ed. 355 (1932)).

The party seeking to set aside the conveyance has the burden of proving actual intent by

clear and convincing evidence. *See MFS/Sun Lift Trust–High Yield Series v. Van Dusen Airport*

*Servs. Co.*, 910 F.Supp. 913, 934-35 (S.D.N.Y.1995). It is the intent of the transferor that is

dispositive, not that of the transferee when seeking to avoid a transfer to an initial transferee. *See*

*HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1059 n. 5 (2d Cir.1995) (*HBE*). "Actual intent is difficult to establish through direct evidence and therefore, the relevant intent may be inferred from the facts and circumstances surrounding the transfer." *Geltzer v. D'Antona (In re Cassandra Grp.)*, 312 B.R. 491, 497 (Bankr. S.D.N.Y. 2004). The plaintiff may rely on "badges of fraud" to support its case of actual intent, which are viewed as "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *see also Salomon v. Kaiser (In re Kaiser),* 722 F.2d 1574, 1582–83 (2d Cir.1983). The existence of several badges of fraud can constitute clear and convincing evidence of actual intent. *See In re MarketXT Holdings Corp.*, 376 B.R. at 405. "Badges of fraud" include, but are not limited to, the following:

(1) the lack or inadequacy of consideration;
(2) the family, friendship or close associate relationship between the parties;
(3) the retention of possession, benefit or use of the property in question;
(4) the financial condition of the party sought to be charged both before and after the transaction in question:
(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
(6) the general chronology of the events and transactions under inquiry;
(7) a questionable transfer not in the usual course of business; and
(8) the secrecy, haste, or unusualness of the transaction

*HBE Leasing Corp v. Frank,* 48 F.3d 623, 639 (2d Cir. 1995).

The Trustee admits there is little evidence before the Court regarding the Debtor's actual intent. [Trustee's Mem. 6]. There is no testimony by the Debtor regarding his intent or even his knowledge regarding the transfers to the Defendants, and Beth's testimony sheds no light on this issue. In support of his argument, the Trustee asserts the existence of the following badges of fraud: "(i) Debtor received no consideration; (ii) the payments remitted from the joint checking

account to the Defendant were intended to benefit the Debtor's sister-in-law only; (iii) the Debtor's financial difficulties were well known and well established." *Id.*

While it is accurate to state that the Debtor received no consideration for the Transfers, the Defendants are not related to the Debtor, the Trustee provided no evidence regarding the Debtor's financial difficulties at the time of each transfer, and there is no indication that the Transfers were made in haste or in secret. Once the Transfers were made, the Debtor did not retain any use of the funds and the Trustee has provided no chronology to suggest that the Debtor was secreting money to the Defendants in order to keep one step ahead of his creditors. In sum, there are insufficient badges of fraud to infer an intent by the Debtor to defraud. For these same reasons, the Trustee cannot recover attorneys' fees under NYDCL § 276-a. "Section 276-a states that attorneys' fees should be awarded when a conveyance is found to have been made by the debtor *and received by the transferee with actual intent*, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (internal quotations omitted). Therefore, even if Beth were a mere conduit with respect to the Transfers, these causes of action would be dismissed because the Trustee did not meet his burden to establish a *prima facie* case.

### b. Third Through Six Causes of Action Based on Constructive Fraud

The Trustee also seeks to avoid the Transfers based on constructive fraud. A person challenging a transfer of the debtor's property as constructively fraudulent under the NYDCL must show that it was made without fair consideration and "the debtor was insolvent or was rendered insolvent by the transfer, [NYDCL § 273], . . . or the debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured [*Id.* § 275]."

A trustee making a case under NYDCL § 273 and § 275 has the burden of proving lack of fair consideration by a preponderance of the evidence. *See Gowan v. Patriot Grp., LLC (In re Dreier)*, 452 B.R. 391, 442-43 (Bankr. S.D.N.Y. 2011). NYDCL § 272 defines fair consideration as requiring two elements: that the exchange be made for equivalent value and be in good faith. *See HBE*, 61 F.3d at 1058-59. Fair consideration is given so long as the consideration is not disproportionately small compared to the value of the property that was transferred. *See Secs. Inv. Prot. Corp. v. Rossi (In re Cambridge Capital)*, *LLC*, 331 B.R. 47, 63 (Bankr. E.D.N.Y. 2005). "[C]ourts have long recognized that '[t]ransfers made to benefit third parties are clearly not made for a "fair" consideration.'" *Rubin v. Mfrs. Hanover Trust Co.,* 661 F.2d 979, 991 (2d Cir. 1981) (citing 4 COLLIER ON BANKRUPTCY P. 67.33, at 514.1-14.2 (14th ed. 1978). The good faith at issue is the good faith of the transferee. *See HBE*, 61 F.3d at 1059 n.5.

The Trustee contends the Debtor received no consideration in exchange for the Transfers. The Defendants do not provide evidence to the contrary. The Trustee has met his burden of proof regarding the lack of consideration received by the Debtor with respect to each transfer. Therefore, the Trustee has met the first prong of each of these sections of the NYDCL.

NYDCL § 273 requires proving the debtor's solvency, for which the trustee bears the burden of proof. *American Inv. Bank, N.A. v. Marine Midland Bank, N.A.*, 191 A.D.2d 690, 692, 595 N.Y.S.2d 537, 538 (2d Dep't 1993).   "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NYDCL § 271(1). Under New York law, there is a presumption of insolvency where the debtor makes a transfer without fair consideration. *See Geltzer v. Borriello (In re Borriello)*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005); *Mendelsohn v. Jacobwitz (In re Jacobs)*, 394 B.R. 646, 672 (Bankr. E.D.N.Y. 2008)

("[T]here is a rule of long standing in the New York court that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.") (citing *Feist v. Druckerman,* 70 F.2d 333, 334-35 (2d Cir.1934)). When the presumption arises the burden then shifts to the transferee to prove the transferor's solvency. *Ackerman v. Ventimiglia (In re Ventimiglia),* 362 B.R. 71, 83 (Bankr. E.D.N.Y.2007).

Because the Trustee established the Transfers were made without fair consideration, there is a presumption that the Debtor was insolvent at the time of the Transfers. The Defendants, who bear the burden of overcoming this presumption, failed to introduce such supporting evidence. Therefore, the presumption of the Debtor's insolvency stands and the Trustee has satisfied the elements of NYDCL § 273.

Under NYDCL § 275, a transfer made for less than fair consideration is fraudulent if the debtor intends or believes that he will incur debts that he will be unable to pay as they come due. The Trustee has the burden of proving that the transferor intended or believed that he would incur debts beyond his ability to pay for the purposes of NYDCL § 275.  The "ability to pay" financial test requires proof of the transferor's subjective intent or belief that it will incur debt it cannot pay at maturity. *Tese-Miller v. Edidin & Assocs. (In re Operations NY LLC)*, 490 B.R. 84, 98 (Bankr. S.D.N.Y. 2013) (citing *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 943 (S.D.N.Y. 1995)).  While the Trustee need not establish proof of intent to defraud, the Trustee is charged with establishing proof of the Debtor's subjective intent or belief that it will incur debt it cannot pay at maturity.  *See In re Operations NY LLC*, 490 B.R. at 98-99; *In re Best Prods. Co.,* 168 B.R. 35, 52 n. 28 (Bankr. S.D.N.Y.1994), *aff'd,* 68 F.3d 26 (2d Cir.1995).

The Trustee has failed to provide any evidence of the Debtor's intent or belief, or state of mind in general, at the time of the Transfers. Without such evidence, the Trustee cannot succeed on this claim.  Therefore, the fifth cause of action is dismissed.

### c.  Property of the Estate

Although the Trustee has satisfied the elements of NYDCL § 273, Bankruptcy Code § 544 requires the Trustee to prove the Transfers constituted property of the Debtor's estate. Section 544 specifically states the trustee has the right to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable." 11 U.S.C. § 544.  For the purposes of avoidance actions, a debtor's interest is property is "best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.,* 496 U.S. 53, 58, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Property that would have been part of the estate if not for the transfer is defined by § 541. *Id.*  Section 541 provides property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

 As previously discussed, a debtor's property rights are defined by applicable state law. Because the Court has determined, by virtue of New York state law, that the Debtor and Beth are joint tenants entitled to one half of the Joint Account, only one half of the funds in the Joint Account were property of the estate at any given point in time.  Therefore, even if the Court were to conclude that Beth was a conduit as to half of the funds in the Joint Account, the Court must take into account that Beth owned the other half of the funds under New York law. As a result, the dollar amount in the Joint Account during the time of the Transfers is relevant.  It is entirely possible that the Transfers were made from Beth's share in the Joint Account.  The Trustee did

not introduce into evidence bank statements for the Joint Account covering the dates of each transfer at issue. As a result, it is impossible for the Court to ascertain whether the funds received from the Defendant were property of the Debtor's estate.

The few bank statements provided by the Trustee are also insufficient to determine with certainty whether the Transfers evidenced were property of the estate. Although it is apparent how much was deposited into the Joint Account for each statement term and what remained at the time of the Transfers, there is no record regarding the nature of the multiple withdrawals preceding the Transfers. The record created by the Trustee is simply insufficient for the Court to conclude that any of the Transfers were made from property of the Debtor's estate. In sum, the Trustee cannot rely on assumptions to prove his case. Therefore, the third cause of action is dismissed.

### 5.  **Additional Cause of Action Under Bankruptcy Code § 548(a)(1)(A)**

The complaint is deemed amended *sua sponte* and includes § 548(a)(1)(A) as a cause of action. Section 548(a)(1)(A) of the Bankruptcy Code provides:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A).

Section 548(a)(1)(A) is similar to NYDCL § 276 in that it applies to transfers made with intent to deceive, however, this section only applies to transfers made within two years of the date of the petition. In this case, the Trustee could only seek to avoid the Transfers that occurred after May 8, 2017, which would limit the Trustee's recovery to $63,684.00. Regardless of this

limitation, this action must also be dismissed for the same reasons that the seventh and ninth causes of action are dismissed. [7]

## Conclusion

For the reasons set forth in this Decision, judgment shall be entered in favor of the Defendants dismissing each and every cause of action in the complaint and the additional cause of action under 11 U.S.C. § 548(a)(1)(A).



**Dated: Central Islip, New York**
**June 21, 2021**

**Robert E. Grossman**
**United States Bankruptcy Judge**

[7] *See supra* Part 4(a).